**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHESTER GIBAS,** | ) | FILED: MAY 16, 2008 |
| | ) | 08CV2851   RCC |
| **Plaintiff,** | ) | JUDGE HIBBLER |
| | ) | MAGISTRATE JUDGE MASON |
| **v.** | ) | |
| | ) | **Case No.** |
| **ACCU-CUT DIAMOND TOOL** | ) | |
| **COMPANY, INC., ACCU-CUT** | ) | **JURY DEMANDED** |
| **DIAMOND BORE SIZING** | ) | |
| **SYSTEM, INC. and STANLEY** | ) | |
| **DOMANSKI, individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**COMPLAINT**

Plaintiff, Chester Gibas, through his counsel, Klein Dub & Holleb, Ltd., brings this action against Defendants Accu-Cut Diamond Bore Sizing System, Inc. (collectively "Accu-Cut"), and Stanley Domanski ("Domanski"), and alleges and states as follows:

**NATURE OF PLAINTIFF'S CLAIMS**

1.      This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. §3201 *et seq.* ("FLSA"), and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL") for Defendant's failure to pay overtime wages to Plaintiff.  Plaintiff was entitled to be paid one and one half times his regular rate for time he worked in excess of forty (40) hours per week, but Defendant failed to pay Plaintiff all of his overtime wages.

2.      This lawsuit also arises under the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 *et seq.* ("FMLA") to correct Defendant Accu-Cut's unlawful employment practices and to make Plaintiff whole.  Accu-Cut interfered with Plaintiff's rights under the FMLA and

discriminated and retaliated against Plaintiff for attempting to exercise his rights to leave after undergoing cancer surgery.

3.     This lawsuit also arises under the common law of Illinois based upon Defendants' defamation of Plaintiff, Defendants' intentional infliction of secure emotional distress upon Plaintiff and Defendants' retaliatory constructive discharge of Plaintiff in violation of the public policy of the State of Illinois by Defendants' course of conduct when Plaintiffs opposed Defendants' unlawful conduct.

## THE PARTIES

4.     Plaintiff resides in and is domiciled within this judicial district, at all times relevant to the Complaint.

5.     Defendants Accu-Cut Diamond Tool Company, Inc. and Accu-Cut Diamond Bore Sizing Systems, Inc. are both Illinois corporations, with their principal places of business located at 4238-40 North Sayre, Norridge, Illinois 60706. Defendants are both an "employer" as defined by the FLSA, 29 U.S.C. §203(d) and as defined by the FMLA, 29 U.S.C. §2614 (4).

6.     Defendant Stanley Domanski is involved in the day-to-day business operation of the Accu-Cut defendants. Defendant Domanski has the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign the corporations' checking accounts, including payroll accounts, and authority to make decisions regarding employee compensation and capital expenditures.

7.     Defendants were Plaintiff's "employer(s)" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. §203(d), and the IMWL, 820 ILCS 105/3.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over Plaintiff's FLSA and FMLA claims pursuant to 28 U.S.C. §1331, as the claims arise under, respectively, 29 U.S.C. §216(b) and 29 U.S.C. 2601 *et seq.*. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 29 U.S.C. §1367.

9.    Venue is proper in this Court pursuant to 28 U.S.C. §1391, as the Defendants are located in this judicial district and the facts giving rise to Plaintiff's claims occurred in this judicial district.

## BACKGROUND FACTS

10.    Plaintiff Chester Gibas was employed by Accu-Cut from April 22, 1996 until August 3, 2007. Plaintiff was employed as a design engineer.

11.    Throughout his employment at Accu-Cut, Plaintiff was directly supervised by Defendant Domanski.

## COUNT I

### Violation of the Fair Labor Standards Act – Overtime Wages
### (Against All Defendants)

12.    Plaintiff hereby realleges and incorporates paragraphs 1 through 11 of this Complaint.

13.    This count arises from Defendants' violation of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.,* for Defendant's failure to pay overtime wages to Plaintiff for all time he worked in excess of forty (40) hours per week.

14.    Plaintiff was directed by Defendants to work, and did so work, in excess of forty (40) hours per week.

15.     Pursuant to 29 U.S.C. §207, for all weeks during which Plaintiff worked in excess of forth (40) hours, he was entitled to be compensated in a rate of one and one-half times his regular hourly rate of pay.

16.     Defendants did not compensate Plaintiff at a rate of one and one-half times his regularly hourly rate of pay for time worked in excess of forty (40) hours in individual workweeks.   Instead, Defendants paid Plaintiff his regular rate of pay for all time worked, including time worked in excess for forty (40) hours per week.

17.     Defendants' failure and refusal to pay overtime wages for time worked in excess for forty (40) hours per week was a violation of the Fair Labor Standards Act, 29 U.S.C. §207.

18.     Defendants' failure and refusal to pay overtime wages for time worked in excess of forty (40) hours per week was a willful violation of the Fair Labor Standards Act, 29 U.S.C. §207.

19.     Defendants willfully violated the Fair Labor Standards Act by refusing to pay Plaintiff overtime wages for time worked in excess of forty (40) hours per week.

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

A.     A judgment in the amount of one and one-half times Plaintiff's regular hourly rate of pay for all time he worked in excess of forty (40) hours per week;

B.     Liquidated damages in an amount equal to the amount of unpaid overtime compensation found due;

C.     Reasonable attorneys' fees and costs incurred in filing this action; and

D.     Such other further relief as this Court Deems appropriate and just.

## COUNT II

### Violation of the Illinois Minimum Wage Law – Overtime Wages
### (Plaintiff individually only)
### (Against All Defendants)

20.    Plaintiff hereby realleges and incorporates paragraphs 1 through 19 of this Complaint

21.    This Court has supplemental jurisdiction over the matters alleged herein pursuant to 28 U.S.C. §1367.

22.    The matters set forth in this Count arise from Defendants' violation of the overtime compensation provisions of the Illinois Minimum Wage Law.  820 ILCS 105/4a. Plaintiff brings this action pursuant to 820 ILCS 105/12(a).

23.    At all relevant times herein, Defendants were Plaintiff's "employer(s)" as defined in the Illinois Minimum Wage Law, 820 ILCS 105/3(c), and Plaintiff was Defendants' "employee" within the meaning of the Act.

24.    Pursuant to 820 ILCS 105/4, for all weeks during which Plaintiff worked in excess of forty (40) hours, Plaintiff was entitled to be compensated at one and one-half times his regular hourly rate of pay for time worked in excess of forty (40) hours per week.

25.    Defendants violated the Illinois Minimum Wage Law by refusing to compensate Plaintiff at one and one-half times his regular hourly rate of pay for time worked in excess of forty (40) hours per week.

26.    Pursuant to 820 ILCS 105/12(a), Plaintiff is entitled to recover unpaid wages for three years prior to the filing of this suit, plus punitive damages in the amount of two percent (2%) per month of the amount of under payments.

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

A.    A judgment in the amount of one and one-half times Plaintiff's regularly hourly rate of pay for all time which Plaintiff worked in excess of forty (40) hours per week;

B.    Punitive damages pursuant to the formula set forth in 820 ILCS 105/12(a);

C.    Reasonable attorneys' fees and costs incurred in filing this action; and

D.    Such other and further relief as this Court deems appropriate and just.

## COUNT III

### Violation of the Family and Medical Leave Act
### (Against Defendant Accu-Cut)

27.    Plaintiff hereby realleges and incorporates paragraphs 1 through 26 of this Complaint.

28.    In April, 2007, Plaintiff traveled to the Mayo Clinic in Rochester, Minnesota for a physical examination to determine the cause of abdominal pain he suffered from for several years. Plaintiff previously informed Defendant Domanski regarding his trip to the Mayo Clinic.

29.    As a result of Plaintiff's examination by Mayo Clinic doctors he was informed that he suffered from prostate cancer that would require surgery as treatment.

30.    While still at the Mayo Clinic, Plaintiff received a call on his cellular phone from Anna Marziarz ("Marziarz"), an Accu-Cut employee, who assisted Defendant Domanski in his managerial duties at Accu-Cut. On information and belief, Marziarz has a close personal relationship with Defendant Domanski.

31.    During her telephone call, Marziarz demanded to know the results of Plaintiff's medical testing and questioned Plaintiff as to when he would return to work. Because of her relationship with Defendant Domanski, Plaintiff felt compelled to disclose his diagnosis to

Marziarz. Accordingly, Plaintiff told her he had been diagnosed with prostate cancer. Plaintiff also told Marziarz that his chronic stomach pain was believed by the Mayo Clinic doctors not to be caused by the cancer, but was due to stress related to his employment with Accu-Cut. Plaintiff stated that he would return to work on the coming Monday. Marziarz stated that she would immediately inform Defendant Domanski regarding Plaintiff's medical condition.

32.     On Monday, April 16, 2007, Plaintiff returned to work. Upon returning, Plaintiff met with Defendant Domanski. Plaintiff told Defendant Domanski that his doctors informed him that he had prostate cancer and that his stomach problems were caused by work-related stress.

33.     Shortly thereafter, Plaintiff scheduled his surgery at the Mayo Clinic for June 5, 2007. Plaintiff immediately informed Defendant Domanski regarding this date.

34.     From April 16 to June 4, 2007, on an almost daily basis, Defendant Domanski discussed Plaintiff's medical condition with Plaintiff.

35.     Defendant Domanski repeatedly told Plaintiff not to disclose his medical condition with Accu-Cut customers.

36.     During the period from April 16 to June 4, 2007, Defendant Domanski monitored Plaintiff's work more frequently then in the past, causing Plaintiff great stress and anxiety.

37.     About one week prior to his scheduled surgery, in a meeting with Accu-Cut's tooling employees, including, Defendant Domanski, his son Kevin Domanski, Eva Pikl, Agnes Chara and perhaps others, Plaintiff Gibas told Defendant Domanski that he would be off work for approximately two to three weeks following his surgery. Defendant Domanski responded that Plaintiff would only be off work for two to three days following surgery.

38.    On Friday, June 1, 2007, Plaintiff's last work day prior to the surgery, Defendant Domanski again told Plaintiff he should only need to be off work for two-three days following surgery.

39.    On Tuesday, June 5, 2007, Plaintiff had surgery at the Mayo Clinic in Minnesota. The surgery took six hours.

40.    On Wednesday, June 6, 2007, while Plaintiff was still hospitalized, Marziarz telephoned Plaintiff on his cellular phone. She stated that Defendant Domanski directed her to call. Marziarz asked Plaintiff about his operation. Plaintiff told her that the surgery took longer then expected, that he was weak, and that he could barely walk. Marziarz asked Plaintiff when he would return to work. Marziarz told Plaintiff that Defendant Domanski expected him back to work on Friday, June 8. Marziarz stated that she would report this information to Defendant Domanski.

41.    As a result of his concern about his continued employment with Defendant Accu-Cut, Plaintiff requested that he be discharged from the hospital on June 6. Plaintiff was, therefore, discharged from the hospital that day, although his doctor gave him a note restricting him from working for four weeks. Plaintiff then booked a flight home later that day. Due to the severe post-operative pain, Plaintiff took a prescribed morphine pill prior to leaving the hospital. Due to travel delays, the morphine wore off while Plaintiff was still at the Minneapolis airport, causing Plaintiff substantial pain. Plaintiff arrived home that night.

42.    On Friday, June 8, Marziarz again telephoned Plaintiff who was at home recovering from surgery. Marziarz told Plaintiff that Defendant Domanski expected him to be at work on Monday, June 11. Plaintiff told her that he was still in significant pain, was weak, he

had not been able to sleep, had a catheter inserted in his penis and his doctor had told him he could not work for four weeks. Marziarz respondent stating that Defendant Domanski would be upset. She stated that if Plaintiff did not report for work on Monday, Defendant Domanski would cancel his health insurance. Marziarz further referenced how expensive Plaintiff's medical bills would be due to his surgery. Plaintiff responded that due to his condition he could not return to work on Monday and, thus, would take one week of his vacation time for the week of June 11 and would see how he felt thereafter.

43.    On Monday, June 18, despite his doctor's restriction, but due to fear concerning his job and health insurance, Plaintiff reported for work. He was still wearing the catheter at the time.

44.    On June 18, Plaintiff met with Defendant Domanski. Plaintiff told Defendant Domanski that he was still suffering from post-operative pain and was still catheterized. Plaintiff told Defendant Domanski that he would need to be off work on Tuesday, June 19 for a medical appointment to remove the catheter. Defendant Domanski demanded that Plaintiff return to work immediately after the procedure. Plaintiff told Gibas that the doctor told him that he would have to wait at his office for two to three hours after the catheter removal to make sure that he was able to urinate and in the event he had a problem Plaintiff would have to go to the hospital emergency room for re-insertion of a catheter. Plaintiff also told Defendant Domanski that his doctors told him that after he had the catheter removed he would be unable to control his urination for a period of time. Plaintiff told Defendant Domanski that he was also concerned about embarrassing himself in front of co-workers if he returned to work immediately following the catheter removal. Plaintiff, therefore, asked Defendant Domanski to have the whole day off work on June 19.

45.     Defendant Domanski immediately became enraged and started screaming at Plaintiff.  At least three co-workers were present in the area and came over upon hearing Defendant Domanski screaming.  Defendant Domanski, in a raised voice, overheard by co-workers, stated to Plaintiff among other things, the following: "You're faking" and "Why don't you take the catheter out yourself."  Defendant Domanski then threatened to cancel Plaintiff's health insurance and stated "who is going to pay your medical bills."

46.     Plaintiff was shocked, humiliated and embarrassed by Defendant Domanski's conduct, particularly due to the fact co-workers observed it all.

47.     Defendant Domanski went to his office.  He continued to speak loudly and Plaintiff overhead him ask his wife, Christine Domanski, also an Accu-Cut employee, how many sick and vacation days had Plaintiff used.  Plaintiff also heard Defendant Domanski, in a loud voice, overheard by co-workers, state to his wife, that Plaintiff was "lazy" and "faking" his condition.

48.     Christine Domanski then went to Plaintiff's office and told him that he was to return his pay check to her because Defendant Domanski told her to disallow Plaintiff the five paid sick days for the week following his surgery and replace it with vacation days because Plaintiff was "taking too much time off."

49.     About one-half hour later, Marziarz came to Plaintiff's office and gave him his paycheck back and stated that she would reverse the sick days in the next paycheck.  In the presence of Plaintiff and co-workers, Marziarz stated that Chester is "faking" his condition and "why are you making Stan upset so that everyone has to suffer."

50.     On Tuesday, June 19, Plaintiff went to his doctor to have the catheter removed. He remained away from work the whole day.

51.    On returning, June 20, Plaintiff went to work wearing an adult diaper because of the post-operative incontinence.  Plaintiff desired to remain off work longer – as prescribed by his doctor – to regain his strength and the control over his urination so that he would not embarrass himself at work.  However, because Plaintiff feared losing his job and health insurance should he take additional time off, he felt compelled to return to work without taking additional time off due to his post-operative recovery, as required by his physician.

52.    After returning to work, on numerous occasions, Defendant Domanski told Plaintiff's co-workers that Plaintiff is now "weak," he is "not thinking about work" and that "he's only thinking about his illness."

53.    The FMLA provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" a right provided under the FMLA.  26 U.S.C. §2615(a) (1).

54.    At no time did Defendant Accu-Cut inform Plaintiff that his request for time-off to recover from cancer surgery was designated leave under the FMLA.

55.    Plaintiff was denied the opportunity to take FMLA leave for purposes of his own serious health condition, when Defendants required him to return to work under threat of termination and loss of health insurance benefits.  Plaintiff was also denied the opportunity to use paid sick days when he was recuperating from his cancer surgery.  Instead, Defendant Accu-Cut required Plaintiff to use earned vacation time while off work following his surgery.

56.    By the aforesaid conduct, Defendant Accu-Cut interfered with, restrained and denied Plaintiff's rights provided by the FMLA.

57.     In addition to Defendant Accu-Cut's denial of Plaintiff's right to use paid sick days while on FMLA leave, Defendant Accu-Cut's flagrant violation of the FMLA, as manifested by the outrageous and egregious conduct of Defendant Domanski, were done with the specific intent of forcing Plaintiff to resign his employment with Defendant Accu-Cut so that he would not take additional FMLA leave.  Consequently, on August 3, 2007, as a result of the harassing and inhumane violations of the FMLA, Plaintiff was constructively discharged from his employment at Defendant Accu-Cut.

WHEREFORE, Plaintiff prays for a judgment against Defendant as follows:

A.     A judgment is an amount equal to the vacation time Plaintiff was required to use instead of sick pay following his surgery;

B.     An additional amount equal to the lost vacation pay as liquidated damages pursuant to 29 U.S.C. §2617(a)(1)(A)(iii);

C.     Reasonable attorneys' fees and costs incurred in filing this action; and

D.     Such other and further relief as this Court deems appropriate and just.

## COUNT IV

### Intentional Infliction of Emotional Distress
### (Against Defendant Domanski)

58.     Plaintiff hereby realleges and incorporates paragraphs 1 through 57 of the Complaint.

59.     Throughout Plaintiff's employment, Accu-Cut illegally disposed of manufacturing waste on-site, such as heavy metals, nickel coating, benzene, acid and other chemicals used in the manufacturing process.

60.    Plaintiff raised legitimate concerns to Defendant Domanski about the illegal disposal of waste on-site, such as heavy metals, nickel coating, benzene, acid and other chemicals used in the manufacturing process.  Defendant Domanski told Plaintiff to "keep your mouth shut" about the chemical dumping.

61.    Defendant Domanski treated Plaintiff more harshly as a result of the concerns he raised about the illegal disposal of waste on-site, such as heavy metals, nickel coating, benzene, acid and other chemicals used in the manufacturing process.

62.    In March 2007, Defendant Domanski directed Plaintiff to make misrepresentations to inspectors reviewing Defendant Accu-Cut's ISO 9001 compliance regarding Defendant Accu-Cut's unlawful dumping of chemicals into the sewer system.

63.    As a direct and proximate result of the aforementioned conduct of Defendant Domanski, Defendant Domanski willfully and wantonly inflected severe emotional distress upon Plaintiff.

64.    Defendant Domanski's conduct was extreme and outrageous.

65.    Defendant Domanski's intended their conduct to inflict severe emotional distress, or knew there was high probability that their conduct would cause severe emotional distress.

66.    As a direct and proximate result of the conduct of Defendant Domanski, Plaintiff has been damaged in one or more of the following respects:

(a)    Plaintiff has suffered extreme trauma, embarrassment and humiliation, with severe physical and emotional consequences;

(b)    Plaintiff has suffered severe emotional distress including difficulty concentrating, nervousness, depression, anxiety and other emotional symptoms;

13

(c)      Plaintiff has suffered physical illness including but not limited to stomach and intestinal disorders, nausea, insomnia and other physical symptoms;

(d)      Plaintiff experienced and continues to experience pain, suffering, severe mental and emotional distress, injury to his psyche, injury to his self-esteem and dignity.

67.      Defendant Domanski knew that his conduct would cause Plaintiff to experience severe emotional distress.

WHEREFORE, Plaintiff prays for a judgment in his favor and against Defendant Domanski, and for the following relief:

A.      For a judgment for the Plaintiff and against the Defendant Domanski;

B.      Actual, compensatory and punitive damages in the maximum amount provided by law;

C.      Plaintiff's cost and fees incurred in this action; and

D.      Such other relief as this Court deems just and proper.

## COUNT V

### Defamation Per Se
### (Against All Defendants)

68.      Plaintiff hereby realleges and incorporates paragraphs 1 through 67 of this Complaint.

69.      Defendants intentionally made false and *per se* defamatory statements about Plaintiff to co-workers.

70.      In June 2007, Defendant Domanski made statements to co-workers of Plaintiff that Plaintiff was "faking" his medical condition and was "lazy."

71.      These statements are *per se* defamatory because they suggest that Plaintiff is dishonest and not a diligent engineer and, thus, they impute an inability to perform or want of

integrity in the discharge of Plaintiff's duties as an employee of Defendant Accu-Cut and the statements prejudice Plaintiff in his profession.

72.    The statements are false and not otherwise privileged.

73.    As a direct and proximate result of the defamatory statements, Plaintiff has been damaged financially and has suffered severe emotional distress, outrage, humiliation, and anxiety.

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

A.    A judgment in an amount to be determined at trial for compensatory damages and punitive damages;

B.    Costs incurred in filing this action; and

C.    Such other and further relief as this Court deems appropriate and just.

### JURY DEMANDED

Plaintiff demands a trial by jury of all issues triable by a jury under Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Date: May 16, 2008                        CHESTER GIBAS


By:/s/ Joshua D. Holleb
                        One of His Attorneys

JOSHUA D. HOLLEB (ARDC 6185409)
MICHAEL A. PAULL (ARDC 6194021)
DAVI L. HIRSCH (ARDC 06182757)
KLEIN, DUB & HOLLEB, LTD.
660 La Salle Place, Suite 100
Highland Park, Illinois 60035
847.681.9100

K:\Gibas, Chester\Gibas v. Accu-Cut Diamond Tool\Documents\Complaint 5.12.08.doc