## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHESTER GIBAS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 08-CV-2851** |
| ) | |
| **ACCU-CUT DIAMOND TOOL COMPANY,** ) | **Judge: Hibbler** |
| **INC., ACCU-CUT DIAMOND BORE SIZING** ) | **Magistrate Judge: Mason** |
| **SYSTEM, INC. and STANLEY DOMANSKI,** ) | |
| **individually,** ) | |
| ) | |
| **Defendants.** ) | |

### DEFENDANTS' ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES

Defendants Accu-Cut Diamond Tool Company, Inc. ("Accu-Cut Diamond Tool"), Accu-Cut Diamond Bore Sizing Systems, Inc., incorrectly named as "Accu-Cut Diamond Bore Sizing System, Inc." ("Accu-Cut Diamond Bore") (collectively, "Accu-Cut"), and Stanley Domanski ("Domanski") (collectively "Defendants"), by their undersigned counsel in answer to Plaintiff Chester Gibas's ("Plaintiff" or "Gibas") Complaint, timely state and allege as their Answer and Affirmative and Additional Defenses as follows:

### ANSWER

### NATURE OF PLAINTIFF'S CLAIMS

1.     This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. §3201 *et seq.* ("FLSA"), and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq*. ("IMWL") for Defendant's failure to pay overtime wages to Plaintiff. Plaintiff was entitled to be paid one and one half times his regular rate for time he worked in excess of forty (40) hours per week, but Defendant failed to pay Plaintiff all of his overtime wages.

<u>ANSWER:</u>     Paragraph 1 of Plaintiff's Complaint calls for legal conclusions and raises

general jurisdictional issues and, therefore, no response by Defendants is necessary or

appropriate.  To the extent that a response is deemed necessary, Defendants admit that Gibas

purports to bring an action under the Fair Labor Standards Act ("FLSA") and the Illinois

Minimum Wage Law ("IMWL") against Defendants.  Defendants deny that any violations of law

have occurred for which they are legally liable under the FLSA or the IMWL, deny that Plaintiff

is entitled to any award of damages or other relief against Defendants under his Complaint and

further deny all allegations in Paragraph 1 not specifically admitted.


2.      This lawsuit also arises under the Family and Medical Leave Act of 1993, 29
U.S.C. §2601 *et seq.* ("FMLA") to correct Defendant Accu-Cut's unlawful employment
practices and to make Plaintiff whole.  Accu-Cut interfered with Plaintiff's rights under the
FMLA and discriminated and retaliated against Plaintiff for attempting to exercise his rights to
leave after undergoing cancer surgery.

ANSWER:      Paragraph 2 of Plaintiff's Complaint calls for legal conclusions and raises

general jurisdictional issues and, therefore, no response by Defendants is necessary or

appropriate.  To the extent that a response is deemed necessary, Defendants admit that Gibas

purports to bring an action under the Family and Medical Leave Act ("FMLA") against

Defendants.  Defendants deny that any violations of law have occurred for which they are legally

liable under the FMLA, deny that Plaintiff is entitled to any award of damages or other relief

against Defendants under his Complaint and further deny all allegations in Paragraph 2 not

specifically admitted.


3.      This lawsuit also arises under the common law of Illinois based upon Defendants'
defamation of Plaintiff, Defendants' intentional infliction of secure emotional distress upon
Plaintiff and Defendants' retaliatory constructive discharge of Plaintiff in violation of the public
policy of the State of Illinois by Defendants' course of conduct when Plaintiffs [sic] opposed
Defendants' unlawful conduct.

ANSWER:      Paragraph 3 of Plaintiff's Complaint calls for legal conclusions and raises

general jurisdictional issues and, therefore, no response by Defendants is necessary or

appropriate.  To the extent that a response is deemed necessary, Defendants admit that Gibas

purports to bring claims under the common law of Illinois against Defendants. Defendants deny that any violation of law has occurred for which they are legally liable under Illinois common law, deny that Plaintiff is entitled to any award of damages or other relief against Defendants under his Complaint and further deny all allegations in Paragraph 3 not specifically admitted.

### THE PARTIES

4.     Plaintiff resides in and is domiciled within this judicial district, at all times relevant to the Complaint.

ANSWER:     Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 4 of Plaintiff's Complaint.

5.     Defendants Accu-Cut Diamond Tool Company, Inc. and Accu-Cut Diamond Bore Sizing Systems, Inc. are both Illinois corporations, with their principal places of business located at 4238-40 North Sayre, Norridge, Illinois 60706. Defendants are both an "employer" as defined by the FLSA, 29 U.S.C. §203(d) and as defined by the FMLA, 29 U.S.C. §2614 (4).

ANSWER:     Paragraph 5 of Plaintiff's Complaint calls for legal conclusions and raises general jurisdictional issues and, therefore, no response by Defendants is necessary or appropriate. To the extent that a response is deemed necessary, Accu-Cut Diamond Tool and Accu-Cut Diamond Bore admit that they are Illinois Corporations. Accu-Cut Diamond Tool further admits that its principal place of business is located at 4238-40 North Sayre, Norridge, Illinois. Accu-Cut Diamond Bore admits that its principal place of business is located at 4640 North Oketo, Harwood Heights, Illinois. Accu-Cut Diamond Bore denies that it was Plaintiff's employer at any time relevant to this action. Accu-Cut Diamond Tool admits that it was Plaintiff's employer during the time period relevant to this action and that it was Plaintiff's "employer" as defined under the FLSA, 29 USC § 203(d). Defendants deny that they were Plaintiff's "employer" as defined under the FMLA, 29 U.S.C. § 2611(4). Defendants deny all other allegations in Paragraph 5 not expressly admitted.

6.    Defendant Stanley Domanski is involved in the day-to-day business operation of the Accu-Cut defendants.  Defendant Domanski has the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign the corporations' checking accounts, including payroll accounts, and authority to make decisions regarding employee compensation and capital expenditures.

ANSWER:    Defendants admit the allegations of Paragraph 6 with regard to Defendant

Domanski's involvement with Defendant Accu-Cut Diamond Tool.  Defendants further admit

that Domanski has some involvement with the business operations of Defendant Accu-Cut

Diamond Bore.  Further answering, Defendants state that Defendant Domanski shares

responsibility for the day-to-day operations of and decisions regarding Accu-Cut Diamond Bore

with Accu-Cut Diamond Bore's manager, Steve Ball.  Defendants deny all other allegations in

Paragraph 6 not expressly admitted.


7.    Defendants were Plaintiff's "employer(s)" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. §203(d), and the IMWL, 820 ILCS 105/3.

ANSWER:    Accu-Cut Diamond Bore denies that it was Plaintiff's employer at any

time relevant to this action.  Domanski denies that he was Plaintiff's employer at any time

relevant to this action.  Accu-Cut Diamond Tool admits that it was Plaintiff's "employer" as

defined under the FLSA, 29 USC § 203(d), and the IMWL, 820 ILCS § 105/3(c), at the time

relevant to this action.  Defendants deny all other allegations in Paragraph 7 not expressly

admitted herein.


## JURISDICTION AND VENUE

8.    This Court has jurisdiction over Plaintiff's FLSA and FMLA claims pursuant to 28 U.S.C. §1331, as the claims arise under, respectively, 29 U.S.C. §216(b) and 29 U.S.C. 2601 *et seq.*  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 29 U.S.C. §1367.

ANSWER:    Paragraph 8 of Plaintiff's Complaint calls for legal conclusions and raises

general jurisdictional issues and, therefore, no response by Defendants is necessary or

appropriate.  To the extent that a response is deemed necessary, Defendants admit that this Court

has jurisdiction over Plaintiff's claims against Defendants raised in his Complaint, but denies

that Plaintiff is entitled to any award of damages or other relief against Defendants under his

Complaint and further deny all allegations in Paragraph 8 not specifically admitted.


9.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, as the Defendants are
located in this judicial district and the facts giving rise to Plaintiff's claims occurred in this
judicial district.

ANSWER:     Paragraph 9 of Plaintiff's Complaint calls for legal conclusions and raises

general jurisdictional issues and, therefore, no response by Defendants is necessary or

appropriate.  To the extent that a response is deemed necessary, Defendants admit that venue is

proper in this Court with regard to Plaintiff's claims against Defendants raised in his Complaint,

but denies that Plaintiff is entitled to any award of damages or other relief against Defendants

under his Complaint and further deny all allegations in Paragraph 9 not specifically admitted.

## BACKGROUND FACTS

10.     Plaintiff Chester Gibas was employed, by Accu-Cut from April 22, 1996 until
August 3, 2007.  Plaintiff was employed as a design engineer.

ANSWER:     Defendants admit that Accu-Cut Diamond Tool employed Gibas from

approximately April 22, 1996 until he resigned effective August 3, 2007 as an engineer.

Defendants deny all other allegations in Paragraph 10 not specifically admitted.


11.     Throughout his employment at Accu-Cut, Plaintiff was directly supervised by
Defendant Domanski.

ANSWER:     Defendants admit that while Plaintiff was employed by Accu-Cut

Diamond Tool, his immediate supervisor was Defendant Domanski.  Defendants deny all other

allegations in Paragraph 11 not specifically admitted.

## COUNT I

### Violation of the Fair Labor Standards Act - Overtime Wages
### (Against All Defendants)

12.     Plaintiff hereby realleges and incorporates paragraphs 1 through 11 of this Complaint.

ANSWER:     Defendants reallege and incorporate their answers to Paragraphs 1 through 11 for and as their answer to Paragraph 12.

13.     This count arises from Defendants' violation of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*, for Defendant's failure to pay overtime wages to Plaintiff for all time he worked in excess of forty (40) hours per week.

ANSWER:     Paragraph 13 of Plaintiff's Complaint calls for legal conclusions and raises general jurisdictional issues and, therefore, no response by Defendants is necessary or appropriate.  To the extent that a response is deemed necessary, Defendants admit that Gibas purports to bring an action under the FLSA against Defendants.  Defendants deny that any violations of law have occurred for which they are legally liable under the FLSA, deny that Plaintiff is entitled to any award of damages or other relief against Defendants under his Complaint and further deny all allegations in Paragraph 13 not specifically admitted.

14.     Plaintiff was directed by Defendants to work, and did so work, in excess of forty (40) hours per week.

ANSWER:     Defendants deny the allegations of Paragraph 14.

15.     Pursuant to 29 U.S.C. §207, for all weeks during which Plaintiff worked in excess of forth (40) hours, he was entitled to be compensated in a rate of one and one-half times his regular hourly rate of pay.

ANSWER:     Defendants deny the allegations of Paragraph 15.

16.     Defendants did not compensate Plaintiff at a rate of one and one-half times his regularly [sic] hourly rate of pay for time worked in excess of forty (40) hours in individual

- 6 -

workweeks.  Instead, Defendants paid Plaintiff his regular rate of pay for all time worked, including time worked in excess for [sic] forty (40) hours per week.

    <u>ANSWER:</u>    Defendants admit only that Accu-Cut Diamond Tool did not compensate Plaintiff at a rate of one and one-half times any hourly rate of pay for time worked in excess of forty (40) hours in individual workweeks, but further deny that Plaintiff was entitled to payment of overtime wages under the FLSA or the IMWA.  Defendants deny all remaining allegations of Paragraph 16 not expressly admitted.

    17.    Defendants' failure and refusal to pay overtime wages for time worked in excess for forty (40) hours per week was a violation of the Fair Labor Standards Act, 29 U.S.C. §207.

    <u>ANSWER:</u>    Defendants deny the allegations of Paragraph 17.

    18.    Defendants' failure and refusal to pay overtime wages for time worked in excess of forty (40) hours per week was a willful violation of the Fair Labor Standards Act, 29 U.S.C. §207.

    <u>ANSWER:</u>    Defendants deny the allegations of Paragraph 18.

    19.    Defendants willfully violated the Fair Labor Standards Act by refusing to pay Plaintiff overtime wages for time worked in excess of forty (40) hours per week.

    <u>ANSWER:</u>    Defendants deny the allegations of Paragraph 19.

    WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

    A.    A judgment in the amount of one and one-half times Plaintiff's regular hourly rate of pay for all time he worked in excess of forty (40) hours per week;

    B.    Liquidated damages in an amount equal to the amount of unpaid overtime compensation found due;

    C.    Reasonable attorneys' fees and costs incurred in filing this action; and

    D.    Such other further relief as this Court Deems appropriate and just.

ANSWER:    Defendants admit that Plaintiff requests the relief set forth above, but deny that Plaintiff is entitled to any award of damages, payment of wages or any other relief against Defendants under Count I of his Complaint.

## COUNT II

### Violation of the Illinois Minimum Wage Law - Overtime Wages
### (Plaintiff individually only)
### (Against All Defendants)

20.    Plaintiff hereby realleges and incorporates paragraphs 1 through 19 of this Complaint.

ANSWER:    Defendants reallege and incorporate their answers to Paragraphs 1 through 19 for and as their answer to Paragraph 20.

21.    This Court has supplemental jurisdiction over the matters alleged herein pursuant to 28 U.S.C. §1367.

ANSWER:    Paragraph 21 of Plaintiff's Complaint raises general jurisdictional issues and, therefore, no response by Defendants is necessary or appropriate.  To the extent that a response is deemed necessary, Defendants admit that this Court has jurisdiction with regard to Plaintiff's claims against Defendants raised in this Count, but deny that Plaintiff is entitled to any award of damages or other relief against Defendants under his Complaint and further deny all allegations in Paragraph 21 not specifically admitted.

22.    The matters set forth in this Count arise from Defendants' violation of the overtime compensation provisions of the Illinois Minimum Wage Law.  820 ILCS 105/4a. Plaintiff brings this action pursuant to 820 ILCS 105/12(a).

ANSWER:    Paragraph 22 of Plaintiff's Complaint calls for legal conclusions and raises general jurisdictional issues and, therefore, no response by Defendants is necessary or appropriate.  To the extent that a response is deemed necessary, Defendants admit that Gibas

purports to bring an action under the IMWL against Defendants.  Defendants deny that any

violations of law have occurred for which they are legally liable under the IMWL, deny that

Plaintiff is entitled to any award of damages or other relief against Defendants under his

Complaint and further deny all allegations in Paragraph 22 not specifically admitted.


23.     At all relevant times herein, Defendants were Plaintiff's "employer(s)" as defined
in the Illinois Minimum Wage Law, 820 ILCS 105/3(c), and Plaintiff was Defendants'
"employee" within the meaning of the Act.

ANSWER:     Accu-Cut Diamond Bore denies that it was Plaintiff's employer or that

Plaintiff was its employee at any time relevant to this action.  Domanski denies that he was

Plaintiff's employer or that Plaintiff was his employee at any time relevant to this action.  Accu-

Cut Diamond Tool admits that it was Plaintiff's "employer" and that Plaintiff was its "employee"

as defined under the IMWL, 820 ILCS § 105/3(c), at the time relevant to this action.  Defendants

deny all other allegations in Paragraph 23 not expressly admitted herein


24.     Pursuant to 820 ILCS 105/4, for all weeks during which Plaintiff worked in
excess of forty (40) hours, Plaintiff was entitled to be compensated at one and one-half times his
regular hourly rate of pay for time worked in excess of forty (40) hours per week.

ANSWER:     Defendants deny the allegations of Paragraph 24.


25.     Defendants violated the Illinois Minimum Wage Law by refusing to compensate
Plaintiff at one and one-half times his regular hourly rate of pay for time worked in excess of
forty (40) hours per week.

ANSWER:     Defendants deny the allegations of Paragraph 25.


26.     Pursuant to 820 ILCS 105/12(a), Plaintiff is entitled to recover unpaid wages for
three years prior to the filing of this suit, plus punitive damages in the amount of two percent
(2%) per month of the amount of under payments.

ANSWER:     Defendants deny the allegations of Paragraph 26 and further deny that

Plaintiff is entitled to any award or relief whatsoever under Count II of his Complaint.

DM2\1460335.1

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

A.     A judgment in the amount of one and one-half times Plaintiff's regularly hourly rate of pay for all time which Plaintiff worked in excess of forty (40) hours per week;

B.     Punitive damages pursuant to the formula set forth in 820 ILCS 105/12(a);

C.     Reasonable attorneys' fees and costs incurred in filing this action; and

D.     Such other and further relief as this Court deems appropriate and just.

ANSWER:     Defendants admit that Plaintiff requests the relief set forth above, but deny that Plaintiff is entitled to any award of damages, payment of wages or any other relief against Defendants under Count II of his Complaint.


## COUNT III

### Violation of the Family and Medical Leave Act
### (Against Defendant Accu-Cut)

27.     Plaintiff hereby realleges and incorporates paragraphs 1 through 26 of this Complaint.

ANSWER:     Defendants reallege and incorporate their answers to Paragraphs 1 through 26 for and as their answer to Paragraph 27.


28.     In April, 2007, Plaintiff traveled to the Mayo Clinic in Rochester, Minnesota for a physical examination to determine the cause of abdominal pain he suffered from for several years.  Plaintiff previously informed Defendant Domanski regarding his trip to the Mayo Clinic.

ANSWER:     Accu-Cut Diamond Tool and Domanski admit that Plaintiff informed them of his need to travel in April 2007 to the Mayo Clinic in Rochester, Minnesota for medical treatment.  Defendants lack sufficient information or knowledge to admit the truth of the remaining allegations of Paragraph 28.

DM2\1460335.1

29.     As a result of Plaintiff's examination by Mayo Clinic doctors he was informed that he suffered from prostate cancer that would require surgery as treatment.

ANSWER:     Defendants lack sufficient information or knowledge to admit the truth of

the allegations of Paragraph 29.

30.     While still at the Mayo Clinic, Plaintiff received a call on his cellular phone from Anna Marziarz ("Marziarz"), an Accu-Cut employee, who assisted Defendant Domanski in his managerial duties at Accu-Cut.  On information and belief, Marziarz has a close personal relationship with Defendant Domanski.

ANSWER:     Defendants admit that Anna Maziarz ("Maziarz") performs Human

Resources responsibilities for Accu-Cut Diamond Tool.  Defendants admit that Maziarz spoke

with Gibas by telephone about his visit to the Mayo Clinic.  Defendants deny any remaining

allegations of Paragraph 30 not expressly admitted.

31.     During her telephone call, Marziarz demanded to know the results of Plaintiff's medical testing and questioned Plaintiff as to when he would return to work.  Because of her relationship with Defendant Domanski, Plaintiff felt compelled to disclose his diagnosis to Marziarz.  Accordingly, Plaintiff told her he had been diagnosed with prostate cancer.  Plaintiff also told Marziarz that his chronic stomach pain was believed by the Mayo Clinic doctors not to be caused by the cancer, but was due to stress related to his employment with Accu-Cut.  Plaintiff stated that he would return to work on the coming Monday.  Marziarz stated that she would immediately inform Defendant Domanski regarding Plaintiff's medical condition.

ANSWER:     Defendants admit that Maziarz spoke with Gibas by telephone about his

visit to the Mayo Clinic.  Defendants admit that Gibas informed Maziarz that he had been

diagnosed with prostate cancer.  Defendants deny any remaining allegations of Paragraph 31 not

expressly admitted.

32.     On Monday, April 16, 2007, Plaintiff returned to work.  Upon returning, Plaintiff met with Defendant Domanski.  Plaintiff told Defendant Domanski that his doctors informed him that he had prostate cancer and that his stomach problems were caused by work-related stress.

ANSWER:     Defendants admit that Gibas returned to work on April 16, 2007.

Defendants admit that Gibas met with Domanski on or about April 16, 2007.  Defendants admit

that Gibas informed Domanski that he had been diagnosed with prostate cancer.  Defendants

deny any remaining allegations of Paragraph 32 not expressly admitted.


33.     Shortly thereafter, Plaintiff scheduled his surgery at the Mayo Clinic for June 5, 2007.  Plaintiff immediately informed Defendant Domanski regarding this date.

ANSWER:     Defendants admit that Gibas informed Accu-Cut Diamond Tool and

Domanski that he would be having medical treatment at the Mayo Clinic on or about June 5,

2007.  Defendants deny any remaining allegations of Paragraph 33 not expressly admitted.


34.     From April 16 to June 4, 2007, on an almost daily basis, Defendant Domanski discussed Plaintiff's medical condition with Plaintiff.

ANSWER:     Defendants admit that Gibas initiated conversations with Defendant

Domanski on a number of occasions regarding his medical condition.  Defendants deny any

remaining allegations of Paragraph 34 not expressly admitted.


35.     Defendant Domanski repeatedly told Plaintiff not to disclose his medical condition with Accu-Cut customers.

ANSWER:     Defendants deny the allegations of Paragraph 35.


36.     During the period from April 16 to June 4, 2007, Defendant Domanski monitored Plaintiff's work more frequently then in the past, causing Plaintiff great stress and anxiety.

ANSWER:     Defendants deny the allegations of Paragraph 36.


37.     About one week prior to his scheduled surgery, in a meeting with Accu-Cut's tooling employees, including, Defendant Domanski, his son Kevin Domanski, Eva Pikl, Agnes Chara and perhaps others, Plaintiff Gibas told Defendant Domanski that he would be off work for approximately two to three weeks following his surgery.  Defendant Domanski responded that Plaintiff would only be off work for two to three days following surgery.

ANSWER:     Defendants admit that Gibas informed Accu-Cut Diamond about his need

to take time off for medical treatment and recovery in June 2007.  Defendants deny the

remaining allegations of Paragraph 37 not expressly admitted.

- 12 -

38.    On Friday, June 1, 2007, Plaintiff's last work day prior to the surgery, Defendant Domanski again told Plaintiff he should only need to be off work for two-three days following surgery.

ANSWER:    Defendants deny the allegations of Paragraph 38.

39.    On Tuesday, June 5, 2007, Plaintiff had surgery at the Mayo Clinic in Minnesota. The surgery took six hours.

ANSWER:    Defendants admit that Gibas informed Accu-Cut Diamond Tool and Domanski that he was scheduled to have a medical procedure at the Mayo Clinic on or about June 5, 2007.  Defendants lack sufficient information or knowledge to admit the truth of the remaining allegations of Paragraph 39.

40.    On Wednesday, June 6, 2007, while Plaintiff was still hospitalized, Marziarz telephoned Plaintiff on his cellular phone.  She stated that Defendant Domanski directed her to call.  Marziarz asked Plaintiff about his operation.  Plaintiff told her that the surgery took longer then expected, that he was weak, and that he could barely walk.  Marziarz asked Plaintiff when he would return to work.  Marziarz told Plaintiff that Defendant Domanski expected him back to work on Friday, June 8.  Marziarz stated that she would report this information to Defendant Domanski.

ANSWER:    Defendants admit that Maziarz spoke with Gibas by telephone about his medical treatment and anticipated schedule for returning to the office.  Defendants deny any remaining allegations of Paragraph 40 not expressly admitted.

41.    As a result of his concern about his continued employment with Defendant Accu-Cut, Plaintiff requested that he be discharged from the hospital on June 6.  Plaintiff was, therefore, discharged from the hospital that day, although his doctor gave him a note restricting him from working for four weeks.  Plaintiff then booked a flight home later that day.  Due to the severe post-operative pain, Plaintiff took a prescribed morphine pill prior to leaving the hospital. Due to travel delays, the morphine wore off while Plaintiff was still at the Minneapolis airport, causing Plaintiff substantial pain.  Plaintiff arrived home that night.

ANSWER:    Defendants lack sufficient information or knowledge to admit the truth of the allegations of Paragraph 41.

42.    On Friday, June 8, Marziarz again telephoned Plaintiff who was at home recovering from surgery.  Marziarz told Plaintiff that Defendant Domanski expected him to be at work on Monday, June 11.  Plaintiff told her that he was still in significant pain, was weak, he had not been able to sleep, had a catheter inserted in his penis and his doctor had told him he could not work for four weeks.  Marziarz respondent stating that Defendant Domanski would be upset.  She stated that if Plaintiff did not report for work on Monday, Defendant Domanski would cancel his health insurance.  Marziarz further referenced how expensive Plaintiff's medical bills would be due to his surgery.  Plaintiff responded that due to his condition he could not return to work on Monday and, thus, would take one week of his vacation time for the week of June 11 and would see how he felt thereafter.

ANSWER:    Defendants admit that Maziarz spoke with Gibas by telephone about his

medical treatment and anticipated schedule for returning to the office.  Defendants deny any

remaining allegations of Paragraph 42 not expressly admitted.

43.    On Monday, June 18, despite his doctor's restriction, but due to fear concerning his job and health insurance, Plaintiff reported for work.  He was still wearing the catheter at the time.

ANSWER:    Defendants admit that Gibas reported to work on June 18, 2007.

Defendants lack sufficient information or knowledge to admit the truth of the remaining

allegations of Paragraph 43.

44.    On June 18, Plaintiff met with Defendant Domanski.  Plaintiff told Defendant Domanski that he was still suffering from post-operative pain and was still catheterized.  Plaintiff told Defendant Domanski that he would need to be off work on Tuesday, June 19 for a medical appointment to remove the catheter.  Defendant Domanski demanded that Plaintiff return to work immediately after the procedure.  Plaintiff told Gibas [sic] that the doctor told him that he would have to wait at his office for two to three hours after the catheter removal to make sure that he was able to urinate and in the event he had a problem Plaintiff would have to go to the hospital emergency room for re-insertion of a catheter.  Plaintiff also told Defendant Domanski that his doctors told him that after he had the catheter removed he would be unable to control his urination for a period of time.  Plaintiff told Defendant Domanski that he was also concerned about embarrassing himself in front of co-workers if he returned to work immediately following the catheter removal.  Plaintiff, therefore, asked Defendant Domanski to have the whole day off work on June 19.

ANSWER:    Defendants admit Gibas met with Domanski on or about June 18, 2007.

Defendants admit that Gibas informed Accu-Cut Diamond Tool and Domanski that he would be

- 14 -

unable to report to work on June 19, 2007 due to a medical appointment. Defendants deny any

remaining allegations of Paragraph 44 not expressly admitted.


45.    Defendant Domanski immediately became enraged and started screaming at
Plaintiff. At least three co-workers were present in the area and came over upon hearing
Defendant Domanski screaming. Defendant Domanski, in a raised voice, overheard by co-
workers, stated to Plaintiff among other things, the following: "You're faking" and "Why don't
you take the catheter out yourself." Defendant Domanski then threatened to cancel Plaintiff's
health insurance and stated "who is going to pay your medical bills."

ANSWER:    Defendants deny the allegations of Paragraph 45.


46.    Plaintiff was shocked, humiliated and embarrassed by Defendant Domanski's
conduct, particularly due to the fact co-workers observed it all.

ANSWER:    Defendants deny the allegations of Paragraph 46.


47.    Defendant Domanski went to his office. He continued to speak loudly and
Plaintiff overhead him ask his wife, Christine Domanski, also an Accu-Cut employee, how many
sick and vacation days had Plaintiff used. Plaintiff also heard Defendant Domanski, in a loud
voice, overheard by co-workers, state to his wife, that Plaintiff was "lazy" and "faking" his
condition.

ANSWER:    Defendants deny the allegations of Paragraph 47.


48.    Christine Domanski then went to Plaintiff's office and told him that he was to
return his pay check to her because Defendant Domanski told her to disallow Plaintiff the five
paid sick days for the week following his surgery and replace it with vacation days because
Plaintiff was "taking too much time off."

ANSWER:    Defendants deny the allegations of Paragraph 48.


49.    About one-half hour later, Marziarz came to Plaintiff's office and gave him his
paycheck back and stated that she would reverse the sick days in the next paycheck. In the
presence of Plaintiff and co-workers, Marziarz stated that Chester is "faking" his condition and
"why are you making Stan upset so that everyone has to suffer."

ANSWER:    Defendants deny the allegations of Paragraph 49.


50.    On Tuesday, June 19, Plaintiff went to his doctor to have the catheter removed.
He remained away from work the whole day.

ANSWER:     Defendants admit that Gibas did not report to work on June 19, 2007.

Defendants lack sufficient information or knowledge to admit the truth of the remaining

allegations of Paragraph 50.


51.     On returning, June 20, Plaintiff went to work wearing an adult diaper because of
the post-operative incontinence.  Plaintiff desired to remain off work longer -- as prescribed by
his doctor -- to regain his strength and the control over his urination so that he would not
embarrass himself at work.  However, because Plaintiff feared losing his job and health
insurance should he take additional time off, he felt compelled to return to work without taking
additional time off due to his post-operative recovery, as required by his physician.

ANSWER:     Defendants lack sufficient information or knowledge to admit the truth of

the allegations of Paragraph 51.


52.     After returning to work, on numerous occasions, Defendant Domanski told
Plaintiff's co-workers that Plaintiff is now "weak," he is "not thinking about work" and that
"he's only thinking about his illness."

ANSWER:     Defendants deny the allegations in Paragraph 52.


53.     The FMLA provides that it is "unlawful for any employer to interfere with,
restrain, or deny the exercise of or the attempt to exercise" a right provided under the FMLA.  26
U.S.C. §2615(a) (1).

ANSWER:     Paragraph 53 purports to set forth language from the FMLA and therefore

contains legal conclusions or raises jurisdictional issues to which no response by Defendants is

necessary or appropriate.  To the extent that a response is deemed necessary, Defendants admit

that the language set forth in Paragraph 53 is an excerpt from 26 U.S.C. § 2615(a)(1).

Defendants deny that Gibas is entitled to any relief under the FMLA or any other statutory or

common law raised in his Complaint and deny all remaining allegations of Paragraph 53 not

expressly admitted.


54.     At no time did Defendant Accu-Cut inform Plaintiff that his request for time-off
to recover from cancer surgery was designated leave under the FMLA.

- 16 -

ANSWER:    Defendants admit that Accu-Cut Diamond Tool did not inform Gibas that

he qualified for leave under the FMLA, but deny that Plaintiff is a covered employee under the

FMLA and therefore further deny that Accu-Cut Diamond Tool had any obligation to Gibas

arising under the FMLA.  Defendant Accu-Cut Diamond Bore further denies that it was Gibas's

employer at any time relevant to Gibas's Complaint and therefore denies that it had any

obligation to Gibas arising under the FMLA.  Defendants deny all remaining allegations of

Paragraph 54 not expressly admitted.

55.    Plaintiff was denied the opportunity to take FMLA leave for purposes of his own
serious health condition, when Defendants required him to return to work under threat of
termination and loss of health insurance benefits.  Plaintiff was also denied the opportunity to use
paid sick days when he was recuperating from his cancer surgery.  Instead, Defendant Accu-Cut
required Plaintiff to use earned vacation time while off work following his surgery.

ANSWER:    Defendants deny the allegations of Paragraph 55.

56.    By the aforesaid conduct, Defendant Accu-Cut interfered with, restrained and
denied Plaintiff's rights provided by the FMLA.

ANSWER:    Defendants deny the allegations of Paragraph 56.

57.    In addition to Defendant Accu-Cut's denial of Plaintiff's right to use paid sick
days while on FMLA leave, Defendant Accu-Cut's flagrant violation of the FMLA, as
manifested by the outrageous and egregious conduct of Defendant Domanski, were done with the
specific intent of forcing Plaintiff to resign his employment with Defendant Accu-Cut so that he
would not take additional FMLA leave.  Consequently, on August 3, 2007, as a result of the
harassing and inhumane violations of the FMLA, Plaintiff was constructively discharged from
his employment at Defendant Accu-Cut.

ANSWER:    Defendants admit that Gibas voluntarily resigned from Accu-Cut Diamond

Tool effective August 3, 2007.  Defendants deny all remaining allegations of Paragraph 57 not

expressly admitted.

WHEREFORE, Plaintiff prays for a judgment against Defendant as follows:

DM2\1460335.1

A.     A judgment is an amount equal to the vacation time Plaintiff was required to use instead of sick pay following his surgery;

B.     An additional amount equal to the lost vacation pay as liquidated damages pursuant to 29 U.S.C. §2617(a)(l)(A)(iii);

C.     Reasonable attorneys' fees and costs incurred in filing this action; and

D.     Such other and further relief as this Court deems appropriate and just.

## COUNT IV

### Intentional Infliction of Emotional Distress
### (Against Defendant Domanski)

58.     Plaintiff hereby realleges and incorporates paragraphs 1 through 57 of the Complaint.

ANSWER:     Defendants reallege and incorporate their answers to Paragraphs 1 through 57 for and as their answer to Paragraph 58.

59.     Throughout Plaintiff's employment, Accu-Cut illegally disposed of manufacturing waste on-site, such as heavy metals, nickel coating, benzene, acid and other chemicals used in the manufacturing process.

ANSWER:     Defendants deny the allegations of Paragraph 59.

60.     Plaintiff raised legitimate concerns to Defendant Domanski about the illegal disposal of waste on-site, such as heavy metals, nickel coating, benzene, acid and other chemicals used in the manufacturing process. Defendant Domanski told Plaintiff to "keep your mouth shut" about the chemical dumping.

ANSWER:     Defendants deny the allegations of Paragraph 60.

61.     Defendant Domanski treated Plaintiff more harshly as a result of the concerns he raised about the illegal disposal of waste on-site, such as heavy metals, nickel coating, benzene, acid and other chemicals used in the manufacturing process.

ANSWER:     Defendants deny the allegations of Paragraph 61.

62.    In March 2007, Defendant Domanski directed Plaintiff to make misrepresentations to inspectors reviewing Defendant Accu-Cut's ISO 9001 compliance regarding Defendant Accu-Cut's unlawful dumping of chemicals into the sewer system.

ANSWER:    Defendants deny the allegations of Paragraph 62.

63.    As a direct and proximate result of the aforementioned conduct of Defendant Domanski, Defendant Domanski willfully and wantonly inflected severe emotional distress upon Plaintiff.

ANSWER:    Defendants deny the allegations of Paragraph 63.

64.    Defendant Domanski's conduct was extreme and outrageous.

ANSWER:    Defendants deny the allegations of Paragraph 64.

65.    Defendant Domanski's [sic] intended their conduct to inflict severe emotional distress, or knew there was high probability that their conduct would cause severe emotional distress.

ANSWER:    Defendants deny the allegations of Paragraph 65.

66.    As a direct and proximate result of the conduct of Defendant Domanski, Plaintiff has been damaged in one or more of the following respects:

(a)    Plaintiff has suffered extreme trauma, embarrassment and humiliation, with severe physical and emotional consequences;

(b)    Plaintiff has suffered severe emotional distress including difficulty concentrating, nervousness, depression, anxiety and other emotional symptoms;

(c)    Plaintiff has suffered physical illness including but not limited to stomach and intestinal disorders, nausea, insomnia and other physical symptoms;

(d)    Plaintiff experienced and continues to experience pain, suffering, severe mental and emotional distress, injury to his psyche, injury to his self-esteem and dignity.

ANSWER:    Defendants deny the allegations of Paragraph 66.

67.    Defendant Domanski knew that his conduct would cause Plaintiff to experience severe emotional distress.

ANSWER:    Defendants deny the allegations of Paragraph 67.

WHEREFORE, Plaintiff prays for a judgment in his favor and against Defendant Domanski, and for the following relief:

      A.     For a judgment for the Plaintiff and against the Defendant Domanski;

      B.     Actual, compensatory and punitive damages in the maximum amount provided by law;

      C.     Plaintiff's cost and fees incurred in this action; and

      D.     Such other relief as this Court deems just and proper.

ANSWER:     Defendants admit that Plaintiff requests the relief set forth above, but deny that Plaintiff is entitled to any award of damages, payment of wages or any other relief against Defendants under Count IV of his Complaint.

## COUNT V

### Defamation Per Se
### (Against All Defendants)

68.     Plaintiff hereby realleges and incorporates paragraphs 1 through 67 of this Complaint.

ANSWER:     Defendants reallege and incorporate their answers to Paragraphs 1 through 67 for and as their answer to Paragraph 68.

69.     Defendants intentionally made false and *per se* defamatory statements about Plaintiff to co-workers.

ANSWER:     Defendants deny the allegations of Paragraph 69.

70.     In June 2007, Defendant Domanski made statements to co-workers of Plaintiff that Plaintiff was "faking" his medical condition and was "lazy."

ANSWER:     Defendants deny the allegations of Paragraph 70.

71.     These statements are *per se* defamatory because they suggest that Plaintiff is dishonest and not a diligent engineer and, thus, they impute an inability to perform or want of

DM2\1460335.1

integrity in the discharge of Plaintiff's duties as an employee of Defendant Accu-Cut and the statements prejudice Plaintiff in his profession.

ANSWER:    Paragraph 71 calls for a legal conclusion to which no response by

Defendants is necessary or appropriate.  To the extent that an answer is deemed necessary,

Defendants deny the allegations of Paragraph 71.


72.    The statements are false and not otherwise privileged.

ANSWER:    Paragraph 72 calls for a legal conclusion to which no response by

Defendants is necessary or appropriate.  To the extent that an answer is deemed necessary,

Defendants deny the allegations of Paragraph 72.


73.    As a direct and proximate result of the defamatory statements, Plaintiff has been damaged financially and has suffered severe emotional distress, outrage, humiliation, and anxiety.

ANSWER:    Defendants deny the allegations in Paragraph 73.


WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

A.    A judgment in an amount to be determined at trial for compensatory damages and punitive damages;

B.    Costs incurred in filing this action; and

C.    Such other and further relief as this Court deems appropriate and just.

ANSWER:    Defendants admit that Plaintiff requests the relief set forth above, but deny

that Plaintiff is entitled to any award of damages, payment of wages or any other relief against

Defendants under Count V of his Complaint.


Defendants further deny that Plaintiff is entitled to any relief whatsoever under his

Complaint.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

Defendants, by and through their undersigned attorneys, and pursuant to Rule 8 or Rule 12 of the Federal Rules of Civil Procedure, without admitting or suggesting that Defendants bear the burden of proof on any of the following issues, assert the following Affirmative and Additional Defenses to Plaintiff's Complaint and state as follows:

1.　　Defendants allege that Plaintiff's Complaint and each purported cause of action asserted fail to state a claim upon which relief can be granted against Accu-Cut Diamond Bore and Domanski because they were not ever the employer of Plaintiff within the meaning of the FLSA, the IMWA or the FMLA and therefore Plaintiff has no basis to assert claims against Accu-Cut Diamond Bore and Domanski under those statutes.

2.　　Defendants allege that Plaintiff's claims under the FMLA are barred to the extent that Defendants are not covered employers as defined under the FMLA, 29 U.S.C. § 2611(4).

3.　　Defendants allege that Plaintiff's claims under the FLSA are barred because Plaintiff was exempt from the payment of overtime wages as a professional employee within the meaning of 29 U.S.C. § 213(a)(1).

4.　　Defendants allege that Plaintiff's claims under the IMWA are barred because Plaintiff was exempt from the payment of overtime wages as a professional employee within the meaning of 820 ILCS § 105/4a.

5.　　Defendants allege that Plaintiff's Complaint and each purported cause of action asserted fails to set forth facts sufficient to constitute a claim for exemplary or punitive damages.

6.　　Defendants allege that Plaintiff's claims are barred to the extent that discovery shows that he engaged in misconduct prior to, during or concurrent with his employment that otherwise would have resulted in his discharge if such conduct were then known to Defendants.

DM2\1460335.1

7.       Defendants allege that Plaintiff's claims based upon the allegedly defamatory statements made by Defendants are barred to the extent that the allegedly defamatory statements were true.

8.       Defendants allege that Plaintiff's claims based upon the allegedly defamatory statements made by Defendants are barred to the extent that the allegedly defamatory statements were statements of opinion.

9.       Defendants allege that Plaintiff's claims are barred due to his knowing breach of the provisions and terms of his Confidentiality Agreement with Accu-Cut Diamond Tool.

10.       Defendants allege that Plaintiff's claims are barred due to his unclean hands in that he has knowingly misappropriated confidential information from Accu-Cut Diamond Tool.

11.       To the extent that Plaintiff seeks recovery under the FLSA for conduct that occurred beyond the applicable statute of limitations, Defendants allege that Plaintiff's claims are barred.

12.       To the extent that Plaintiff seeks recovery under the IMWA for conduct that occurred beyond the applicable statute of limitations, Defendants allege that Plaintiff's claims are barred.

13.       To the extent that Plaintiff seeks recovery under the Illinois common law claim of defamation for conduct that occurred beyond the applicable statute of limitations, Defendants allege that Plaintiff's claims are barred.

14.       Defendants allege that Plaintiff's claims for damages are barred because Plaintiff suffered no actual damages as a result of the conduct alleged in the Complaint.

Defendants reserve the right to assert additional defenses as they become known to it.

DM2\1460335.1

WHEREFORE, Defendants deny that Plaintiff is entitled to judgment in any sum or to any other relief whatsoever under his Complaint, and respectfully requests this Court to enter judgment in favor of Defendants with costs and reasonable attorneys' fees assessed against Plaintiff, as well as such other and further relief as this Court deems just and appropriate.

> ACCU-CUT DIAMOND TOOL COMPANY, INC., ACCU-CUT DIAMOND BORE SIZING SYSTEM, INC. and STANLEY DOMANSKI, individually,
>
> By:  /s/ Jennifer L. Long
>      One of Their Attorneys

Howard L. Mocerf (A.R.D.C. No.: 01935798)
Frederick R. Ball (A.R.D.C. No.: 06236660)
Jennifer L. Long (A.R.D.C. No.: 6237572)
Duane Morris LLP
190 South LaSalle Street, Suite 3400
Chicago, Illinois 60603
(312) 499-6700
(312) 499-6701 (Fax)

DM2\1460335.1

## <u>CERTIFICATE OF SERVICE</u>

I, Jennifer L. Long, an attorney, hereby certify that on June 10, 2008, this Defendants'
Answer and Affirmative and Additional Defenses was electronically filed using the CM/ECF
system which will send notification to the following CM/ECF participant attorney of record:

Joshua David Holleb
Davi Lynn Hirsch
Michael Adam Paull
Klein, Dub & Holleb, Limited
660 LaSalle Place
Highland Park, IL 60035

 /s/ Jennifer L. Long_____
Jennifer L. Long

- 25 -

DM2\1460335.1